

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI, )
)
      Respondent, )
)
  vs. ) No. SD35474
)
KEARSTAIN N. SLEETH, ) FILED: April 4, 2019
)
      Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden, Judge

**<u>AFFIRMED AND REMANDED WITH DIRECTIONS</u>**

A jury found Kearstain Sleeth guilty of burglary and felony murder. Sufficiency of the evidence is not in dispute.

Sleeth was mad at the victim and told three male friends a story to make them mad too. She gave one young man a handgun, drove the others to get guns of their own, then drove them all to the victim's home and pointed out his bedroom. She waited as the young men went to the front door, kicked it in, forced entry into the victim's room, shot him to death, and returned to the car. Sleeth drove everyone to a remote area to dispose of the murder weapons. Sleeth later gave police a video-recorded interview, after which she was charged and ultimately convicted as stated above.

On appeal, Sleeth's three points challenge evidentiary rulings regarding her interview. We review such claims for abuse of discretion. ***State v. Blurton***, 484 S.W.3d 758, 769 (Mo. banc 2016). A trial court abuses its broad discretion to admit

or exclude evidence only if its ruling is so clearly illogical, unreasonable, arbitrary, and ill-considered that it shocks the sense of justice. *See **id**.* None of Sleeth's points make this showing, so we affirm and remand to correct an error in the written judgment.

## Point 1

Sleeth moved to suppress her interview on two grounds relevant to this appeal:

1. that "cognitive deficiencies due to not being allowed to take her medication ... clearly establish an inability on her part to either understand questions made to her or to be able to verbalize reliable responses," and

2. at one point, she "was told by one of the interrogators that it was a crime for her not to tell him what happened."

After a motion hearing at which Sleeth and her mother testified, the state agreed to suppression of everything from and after Sleeth was told it was a crime not to inform. The court took the rest under advisement, viewed the video twice, found Sleeth "was coherent and mentally stable throughout the interview," and overruled the motion "up to the point when [Sleeth] was told it was a crime not to talk to the police."[1] After editing to remove the suppressed portion, the video was admitted at trial and shown to the jury.

Point 1 charges error in not suppressing the whole interview, alleging that Sleeth's cognitive functioning was so impaired by a lack of medication that her statements were involuntary, unreliable, and should not have been admitted.

As relevant here, we review a suppression ruling only for whether substantial evidence supports it, viewing all facts and reasonable inferences most favorably to the ruling. ***State v. Little***, 473 S.W.3d 662, 666 (Mo.App. 2015). We disregard contrary evidence and inferences. ***State v. Selvy***, 462 S.W.3d 756, 764 (Mo.App. 2015). Unless the trial court indicates otherwise, we presume it found all facts and made all credibility determinations consistent with its ruling (***Little***, 473 S.W.3d at 666-67), and "deem that the trial court implicitly found not credible,

---

[1] Prior to trial, the court confirmed that this ruling suppressed Sleeth's question whether it was a crime not to inform, the affirmative reply, and all subsequent conversation.

or entitled to little to no weight, any testimony or other evidence that does not support its ruling." ***Selvy***, 462 S.W.3d at 764. At bottom, "the weight of the evidence and the credibility of the witnesses are for the trial court's determination." ***Id***. "If the trial court's ruling is plausible, in light of the record viewed in its entirety, we will not reverse." ***Id***.

These principles doom Point 1, which leans heavily on hearing testimony by Sleeth and her mother that we must disregard as contrary to the court's ruling. ***Little***, 473 S.W.3d at 666-67; ***Selvy***, 462 S.W.3d at 764. Although Sleeth also cites the interview video, it offers substantial evidence supporting the trial-court finding that Sleeth "was coherent and mentally stable."[2]

---

[2] The record indicates that Detective Shipley sought to contact Sleeth at her mother's house five months after the slaying. Sleeth was not there, but voluntarily came to the police station later that day. We have viewed the video, which unquestionably supports the trial court's finding that Sleeth "was coherent and mentally stable" in the portions shown to the jury. The trial court also could have deduced from the video:

- That Det. Shipley took Sleeth to an interview room about 6 p.m., informed her that she was "not under arrest, not in custody," but read Miranda warnings anyway; that Sleeth followed along with the oral and written warnings, signed a waiver form, and said she "definitely" wanted to talk and understood why Det. Shipley informed her of her rights.

- That Sleeth spoke with Det. Shipley for about 21 minutes, exhibited no difficulty conversing, directly and promptly answered questions, and recalled events, dates, conversations, and names; that she seemed alert, sitting upright, gesticulating with her hands while speaking; that she denied that she knew the victim or what had happened.

- That Det. Shipley left the room for 15 minutes and returned to find Sleeth sitting upright, reading a magazine; that Det. Shipley had obtained Sleeth's phone from her roommate and gave it to Sleeth; that Det. Shipley and Sleeth conversed for nine minutes while Sleeth tried to retrieve information stored in her phone; that Sleeth again seemed alert, tracking the conversation and answering questions promptly and directly; that Sleeth continued her attempts to retrieve information from her phone while Det. Shipley left and was absent from the interview room for some 90 minutes, apparently conferring with other detectives interviewing the male subjects.

- That Det. Shipley returned to find Sleeth still in the interview room, sitting upright, looking at her phone; that Det. Shipley became confrontational, telling Sleeth it was time to stop lying because her friends had come clean; that Sleeth admitted she knew the victim from her work and a bad drug deal, she wanted him beaten, she knew her male friends would "whoop his ass," she drove them to the victim's house and watched them go in and come out, but she denied any murder occurred; that Sleeth again seemed alert, tracking the conversation, promptly and directly answering questions, and sometimes refusing to answer or replying "I don't know"; that this part of the interview lasted about an hour.

- That after a 15-minute break, Det. Shipley returned with a photo of the victim and Sleeth agreed he was the one; that Sleeth again sat upright, seemed alert, tracked the conversation, and directly and promptly answered questions; that Sleeth eventually asked, "Is it a crime for me to not tell you?" and Det. Shipley replied, "Yeah."

3

These effectively end our inquiry.  *Little*, 473 S.W.3d at 666-67.  The trial court's ruling is plausible, given the record viewed in its entirety, so we will not reverse.  *Selvy*, 462 S.W.3d at 764.  We need not address other grounds for affirmance argued by the state.  We deny Point 1.

## Point 2

Point 2 urges that the trial court abused its discretion in refusing – despite suppression – to still let the jury hear that Sleeth asked, "Is it a crime for me to not tell you?" and that Det. Shipley replied, "Yeah."  Sleeth's reasoning, to quote her brief, is the state's case "turned on casting [Sleeth] as a liar during her video statement.  Had the jurors learned of Shipley's blatant conceded *Miranda* violation[3] that would have called into doubt the reliability of all of [Sleeth's] statements as having been unreliable and coerced by Shipley."

This is a *non sequitur*.  Whether Det. Shipley *later* misstated the law cannot prove or disprove Sleeth's *earlier* honesty about her factual knowledge; likewise for whether a *latter* misstatement creates an *earlier* coercion.

The trial court's ruling was well within its broad discretion.  Point 2's fallacious argument does not prove otherwise.[4]  Point denied.

---

- That 3½ hours passed before Sleeth first mentioned needing medications; that Sleeth then said she felt sick and needed medications from home; that Det. Shipley asked about the medications and how to get them, made arrangements to do so, and, while waiting, asked Sleeth if she needed an ambulance; that Sleeth said she just needed her medicine, some water, and sugar, and that water and some candies were provided.

- That three minutes later, Sleeth slid out of her chair and onto the floor, police rushed in within seconds, attended to Sleeth, and called an ambulance; that Sleeth told a paramedic she "got really dizzy all of a sudden" and "fell" due to stress and lack of medication, initially declined to go to the hospital, saying she was "alright," "OK," and just had to "get [herself] together," but then decided to go to the hospital by ambulance.

[3] "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Sleeth never explains why she repeatedly describes Det. Shipley's act (right or wrong) in *Miranda* terms.  No one did so in the trial court.  "*Miranda* set[s] forth rules of police procedure applicable to 'custodial interrogation.'"  *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977).  "[P]olice officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect."  *Id.* at 495.  Sleeth voluntarily appeared for a non-custodial interview, has not argued here or below that such status changed, and in any event, received Miranda warnings both orally and in writing.

[4] Assuming the "rule of completeness" could fit this scenario at all, Sleeth's appeal to it fails.  "A defendant may introduce only those omitted portions of a confession or admission that are necessary to ensure that the portions admitted by the State are not taken out of context."  *State v.*

4

## Point 3

Point 3 complains that the trial court erred in not letting defense counsel question Det. Shipley about Sleeth "requiring emergency ambulance medical treatment for passing out."[5] This claim is not preserved.

The state sought and obtained a pretrial ruling *in limine* precluding such evidence, but "a ruling on a motion *in limine* is interlocutory and subject to modification at trial." **Blurton**, 484 S.W.3d at 775. The trial court indicated this when it ruled – "I'm going to sustain this for now and before we get [into the recording] in the trial, we'll have a conference on it if you think you still want to get into it depending on how the trial goes."

Such pretrial ruling in and of itself preserves nothing for appeal. **State v. Marshall**, 131 S.W.3d 375, 377 (Mo.App. 2004). "To preserve the matter for appeal, the proponent of the evidence must attempt to present the excluded evidence at trial, and if an objection to the proposed evidence is raised and sustained, the proponent must then make an offer of proof." **Id**. Sleeth did neither. As for Sleeth's alternate request for plain-error review, when neither cross-examination nor offer of proof was even attempted, we cannot possibly find evident, obvious, or clear error, much less manifest injustice. Finally, Sleeth's appeal to the rule of completeness fails for the same reasons as in Point 2. Point 3 fails.

### Remand Necessary

Sleeth initially was charged with three counts: (I) second-degree murder, (II) armed criminal action, and (III) first-degree burglary. Later, an amended information had second-degree murder as Count I, no Count II, and first-degree burglary as Count III. Before voir dire, the court confirmed that only murder and burglary were being tried, and jurors received instructions and returned verdicts as to those crimes only. At sentencing, the defense noted that Sleeth had not been convicted of armed criminal action, after which the court orally pronounced

---

**Ellis**, 512 S.W.3d 816, 828 (Mo.App. 2016). There is no absolute right to introduce more of a statement whenever the State has admitted part; admissibility "remains a matter left to the discretion of the trial court." **Id**. at 829.

[5] *See* footnote 2, last bullet point, *supra*.

sentence as "15 years in the Missouri Department of Corrections on Count 1, 15 years on Count 3, to run concurrent to each other." The record is clear that Sleeth was tried, convicted, and orally sentenced for felony murder and first-degree burglary. Neither party claims otherwise.

Unfortunately, the court entered an incorrect written judgment that lists first-degree burglary as Count II; states that Count II, originally charged as armed criminal action, was amended to first-degree burglary; and states that original Count III, first-degree burglary, was "Dismissed by Prosec/Nolle Pros." Failure to accurately record Sleeth's convictions was a clerical error correctable *nunc pro tunc* for which remand is appropriate. ***State v. Henderson***, 468 S.W.3d 422, 426 (Mo.App. 2015).

## Conclusion

Sleeth's points fail. We remand with directions to enter a corrected judgment reflecting that Sleeth was found guilty of felony murder and sentenced to 15 years on Count I, and found guilty of first-degree burglary and sentenced to 15 years on Count III, with both sentences to run concurrently, and that Count II (armed criminal action) was dismissed/*nolle pros*. In all other respects, the judgment and convictions are affirmed.

DANIEL E. SCOTT, J. – OPINION AUTHOR
JEFFREY W. BATES, J. – CONCURS
MARY W. SHEFFIELD, J. – CONCURS

6