

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED106852 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Lincoln County |
| vs. | ) | |
| | ) | Honorable James D. Beck |
| HARVEY D. HARRIS, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 20, 2019 |

## Introduction

Harvey D. Harris ("Harris") appeals his conviction following a bench trial of the class B misdemeanor of driving while intoxicated. In his sole point on appeal, Harris argues the trial court erred in overruling his motion to suppress his statement that he had "a couple" or "a few" drinks because the statement was elicited without a *Miranda* warning.[1] Because Harris was not in custody for purposes of *Miranda*, we deny the point. Accordingly, we affirm the trial court's judgment.

## Factual and Procedural History

State Trooper Nathan Cockrum ("Trooper Cockrum") arrived at the scene of a motor vehicle accident and saw a truck overturned. Harris was inside the truck, pinned upside down with his legs twisted behind the steering wheel. The truck's fuel line was ruptured and leaking

---

[1] *Miranda v. Arizona*, 382 U.S. 435 (1966).

into the cab. Trooper Cockrum retrieved his first aid kit and approached the vehicle to provide emergency assistance. Trooper Cockrum crawled underneath the truck to make contact with Harris, who exhibited labored breathing and unintelligible speech. Trooper Cockrum attempted to keep Harris calm as he observed him for injuries and also sought to keep bystanders away from the truck due to the gas fumes.

Shortly thereafter, other first-responders arrived. Firefighters extracted Harris from the truck, then paramedics strapped him to a backboard. Trooper Cockrum smelled alcohol on Harris's breath as he helped paramedics carry Harris on the backboard to the awaiting ambulance.

While Harris was restrained inside the ambulance, Harris provided Trooper Cockrum with his name, address, and medical condition, and told Trooper Cockrum what had happened in the accident. Harris also spoke with the paramedics about his health and what occurred in the accident. Trooper Cockrum noted that Harris understood the questions, did not have much difficulty answering them, and gave coherent, appropriate responses. Harris was cooperative and thanked Trooper Cockrum for his service. Trooper Cockrum recognized a strong odor of alcohol while speaking with Harris and further noted Harris's eyes were watery and his speech was slurred. Trooper Cockrum had also observed a number of beer cans near the crash site, including some cans that were still cold to the touch. Trooper Cockrum asked Harris how much he had to drink, and Harris answered "a few" or "a couple." Trooper Cockrum testified that he did not give Harris a *Miranda* warning before asking him how much he had to drink because Harris was not under arrest at that time. Trooper Cockrum also indicated in response to a hypothetical that even if Harris had not been strapped inside a moving ambulance, he would have preferred Harris stay and answer his questions.

2

Trooper Cockrum then requested Harris submit to a preliminary breath test. Harris consented to the breath test, which tested positive for alcohol consumption. Subsequently, Trooper Cockrum placed Harris under arrest based on his observations of Harris, the odor of alcohol on Harris's breath, Harris's breath test, and Harris's statement that he had "a few" or "a couple" drinks. Trooper Cockrum read Harris Missouri's implied consent law, and Harris consented to a blood draw by a paramedic, which recorded a blood alcohol content above the legal limit. Harris was taken to a hospital for further medical treatment.

The State charged Harris with driving while intoxicated. Prior to trial, Harris moved to suppress his statement that he had "a few" or "a couple" drinks based on Trooper Cockrum's failure to provide Harris a *Miranda* warning before asking Harris whether he had been drinking. The trial court held a hearing on Harris's suppression motion. At the hearing, the State countered that an officer may detain a person and conduct an initial investigation as to whether he or she was driving while intoxicated before a *Miranda* warning is required. The trial court overruled Harris's motion to suppress, holding that no *Miranda* warning was necessary because Trooper Cockrum was permitted to ask preliminary investigative questions without issuing a *Miranda* warning in a routine traffic stop.

The case proceeded to a bench trial. The trial court found Harris guilty of the class B misdemeanor of driving while intoxicated. The trial court then sentenced Harris to thirty days in jail. Harris now appeals.

<u>Point on Appeal</u>

In his sole point on appeal, Harris argues the trial court erred in denying his motion to suppress and objection to his statement that he had "a couple" or "a few" drinks because the statement should have been suppressed as the product of a custodial interrogation without a *Miranda* warning.

3

We review a trial court's ruling on a motion to suppress only for whether the ruling is supported by substantial evidence, viewing all facts and reasonable inferences most favorably to the ruling. State v. Sleeth, 575 S.W.3d 291, 294 (Mo. App. S.D. 2019). "We will not disturb the trial court's decision to admit or exclude evidence unless there has been an abuse of discretion." State v. Chambers, 234 S.W.3d 501, 512 (Mo. App. E.D. 2007); see also Sleeth, 575 S.W.3d at 294.

## Discussion

"Missouri defines 'custodial interrogation' as questioning initiated by a law enforcement officer after taking an individual into custody or otherwise depriving the individual of his freedom of action in any significant manner." State v. Dickson, 252 S.W.3d 216, 222 (Mo. App. E.D. 2008) (citing State v. Glass, 136 S.W.3d 496, 511 (Mo. banc 2004)); see also State v. Lammers, 479 S.W.3d 624, 631–32 (Mo. banc 2016) (stating that individuals are in custody for purposes of *Miranda* only when an officer formally arrests them or the officer subjects them to arrest-like restraints). In determining whether an individual is in custody for purposes of *Miranda*, we consider the totality of the circumstances and inquire under the case-specific circumstances whether a reasonable person would have understood the situation to be one of police custody. Dickson, 252 S.W.3d at 222 (internal citations omitted).

Ordinary traffic stops are non-coercive in nature and therefore do not involve custody for purposes of *Miranda*. See Berkemer v. McCarty, 468 U.S. 420, 440, 442 (1984); see also Pennsylvania v. Bruder, 488 U.S. 9, 10–11 (1988) (per curiam) (citing Berkemer, 468 U.S. at 440, 442) (applying "Berkemer's rule, that ordinary traffic stops do not involve custody for purposes of *Miranda*"). *Miranda* warnings serve to protect the privilege against compelled self-incrimination as guaranteed by the Fifth Amendment "from the coercive pressures that can be

brought to bear upon a suspect in the context of custodial interrogation." Berkemer, 468 U.S. at 428–29 (citing Miranda, 384 U.S. at 444). Therefore, absent coercive pressure, there is no custody for purposes of Miranda. See id.; State v. Middleton, 854 S.W.2d 504, 511 (Mo. App. W.D. 1993) (internal citation omitted) (noting "[c]oercive police activity is the necessary predicate to finding any statement involuntary and, therefore, inadmissible"). As with other traffic stops, an officer's initial investigatory questioning of a driver at the scene of a motor vehicle accident is not custodial in nature. See Berkemer, 468 U.S. at 440, 442 (finding an officer's request that an individual perform a simple balancing test and answer some investigative questions during a routine traffic stop does not automatically amount to custody, and statements made may be admissible even though Miranda warnings have not been given); see also State v. Crane, 841 S.W.2d 271, 273 (Mo. App. W.D. 1992) (internal citations omitted) (noting "[a] person who is being asked preliminary, investigatory questions by police is not in custody" and "an officer's mere suspicion [that a defendant had been driving while intoxicated] is not enough to render his questions a custodial interrogation").

While Trooper Cockrum's initial investigation in connection with Harris's motor vehicle accident generally would not be considered custodial for purposes of Miranda, we must nonetheless review the case-specific circumstances. See Berkemer, 468 U.S. at 440–42; Dickson, 252 S.W.3d at 222–23 (finding case-specific circumstances surrounding a routine traffic stop triggered a custodial interrogation under Miranda where the officer handcuffed the defendant during a search of the vehicle and the defendant's companion had already been arrested and restrained inside the officer's patrol car). Here, the record does not support a finding that Harris was subjected to a coercive environment predicating custodial interrogation. See Middleton, 854 S.W.2d at 511; see also Berkemer, 468 U.S. at 428–29 (citing Miranda, 384

5

U.S. at 444). When Trooper Cockrum arrived at the scene of Harris's motor vehicle accident, he acted both in his capacity as a first-responder and as an investigating officer. Trooper Cockrum observed Harris for signs of injury as well as intoxication, and he asked Harris permissible investigative questions about the accident. See Michigan v. Bryant, 562 U.S. 344, 368 (2011) (internal citation omitted) ("Police officers in our society function as both first responders and criminal investigators. Their dual responsibilities may mean that they act with different motives simultaneously or in quick succession."); Berkemer, 468 U.S. at 440, 442; Crane, 841 S.W.2d at 273.

Our inquiry does not end there, however, because Harris advances an alternative theory: namely, that he was in custody for purposes of *Miranda* because he was physically restrained in the ambulance by paramedics when Trooper Cockrum asked whether he had been drinking. But physical restraint alone does not invoke *Miranda* protections, and physical restraint imposed by paramedics does not create the inherently coercive environment contemplated by *Miranda*. See United States v. Jamison, 509 F.3d 623, 625, 632 (4th Cir. 2007) (holding a hospitalized defendant was not in custody for *Miranda* purposes where his inability to freely terminate the officer's questioning was not due to restraint imposed by the officer but rather due to his injury and hospital admittance); Wilson v. Coon, 808 F.2d 688, 690 (8th Cir. 1987) (citing Berkemer, 468 U.S. at 438–39). This same theory of custody based on actual restraint was rejected by the Eighth Circuit in a non-binding but persuasive case presenting a highly similar fact pattern. See Wilson, 808 F.2d at 689–90 (reviewing a habeas corpus petition for relief from a conviction under Missouri state law) (holding that the defendant was not in custody for purposes of *Miranda* where he had been physically restrained in an ambulance by paramedics at the time the officer asked investigative questions following a motor vehicle accident).

The facts here clearly establish that paramedics—not Trooper Cockrum—restrained Harris at the scene of his motor vehicle accident in order to provide medical treatment. At the time Trooper Cockrum asked Harris whether he had been drinking, Harris was not under arrest and was not handcuffed or otherwise restrained by Trooper Cockrum. Nor did Trooper Cockrum direct the paramedics to restrain Harris. As a result, Harris was not subjected to custodial interrogation. See Lammers, 479 S.W.3d at 631–32; Dickson, 252 S.W.3d at 222; see also Jamison, 509 F.3d at 625, 632; Wilson, 808 F.2d at 689–90.

Although Harris was strapped to a backboard in an ambulance and physically unable to leave, a reasonable person in Harris's circumstances would not perceive an inherently coercive environment in being restrained for medical transportation in an ambulance with paramedics and an officer following a motor vehicle accident. See Wilson, 808 F.2d at 689–90; see also Jamison, 509 F.3d at 625, 632. Restraint for medical attention has been found not inherently coercive because: (1) a reasonable person would expect the detention to last only for the time that is medically necessary and would feel free to leave afterward, (2) detention in an ambulance occurs publicly in view of paramedics who are non-police witnesses, reducing the likelihood of oppressive law enforcement tactics, and (3) "most importantly, the physical restraint [is] applied by ambulance attendants for medical purposes, not by law-enforcement officers for investigative purposes." Wilson, 808 F.2d at 690 (citing Berkemer, 468 U.S. at 438–39). Although Trooper Cockrum testified in response to a hypothetical that he would not have wanted to allow Harris to leave even if Harris had not been strapped to a backboard in a moving ambulance, our examination is limited to the objective evidence of the officer's imposition of custodial restraints and whether a reasonable person would perceive he was in a coercive custodial environment. See Dickson, 252 S.W.3d at 222; Crane, 841 S.W.2d at 273. The fact-specific circumstances

here lead us to conclude that a reasonable person would not perceive being asked routine investigative questions by an officer in an ambulance while being restrained for medical purposes by paramedics to be an inherently coercive situation invoking *Miranda*. See Wilson, 808 F.2d at 690. While "[t]here may be facts which transform physical restraint for a routine medical examination at an accident site into an inherently coercive situation," the record here does not demonstrate Harris was restrained in a situation that was "police-dominated, inherently coercive, or tantamount to a formal arrest" so as to trigger *Miranda* protections for his statement in response to Trooper Cockrum's question that he had "a few" or "a couple" drinks. Id.; see also Berkemer, 468 U.S. at 428–29 (citing Miranda, 384 U.S. at 444); Middleton, 854 S.W.2d at 512.

The record presents substantial evidence to support the trial court's ruling that Harris was not in custody for purposes of *Miranda* to warrant suppression of his statement. See Sleeth, 575 S.W.3d at 294; Middleton, 854 S.W.2d at 512. Accordingly, the trial court did not err in denying Harris's motion to suppress, and we deny the point on appeal.

## Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, Judge

Philip M. Hess, P.J., concurs.
Lisa P. Page, J., concurs.

8